United STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

In re:                                    Chapter 15

SPHINX, LTD., et al.,                     Case No.: 06-11760 (RDD)

Debtors in Foreign Proceedings.           (Jointly Administered)

------------------------------------------X

KENNETH M. KRYS and CHRISTOPHER STRIDE,
as Joint Official Liquidators of
SPhinX, Ltd., et al.,

                    Appellants,           06 Civ. 13215 (RWS)
                                                OPINION
        -against-

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF REFCO INC., et al. and MARC S. KIRSCHNER,
as Chapter 11 Trustee of Refco Capital
Markets, Ltd.,

                    Appellees.

------------------------------------------X



7-5-07

A P P E A R A N C E S:

    Attorneys for Kenneth M. Krys and
    Christopher Stride, as the Foreign
    Representatives of the SPhinX Debtors

    KAYE SCHOLER LLP
    425 Park Avenue
    New York, NY 10022
    By: MADLYN GLEICH PRIMOFF, ESQ.
        MICHAEL LYNN, ESQ.

    LOVELLS
    590 Madison Avenue
    New York, NY 10022
    By: GARY S. LEE, ESQ.
        KAREN OSTAD, ESQ.

Attorneys for Joint Subcommittee of
Official and Additional Committees
of Unsecured Creditors of Refco., et al.

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
By:  LUC A. DESPINS, ESQ.
     SUSHEEL KIRPALANI, ESQ.
     DENNIS C. O'DONNELL, ESQ.
     ANDREW M. LEBLANC, ESQ.


Attorneys for Marc S. Kirschner, Chapter 11
Trustee for Refco Capital Markets, Ltd.

BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, NY 10022
By:  TIMOTHY B. DESIENO, ESQ.
     TINA L. BROZMAN, ESQ.
     JARED R. CLARK, ESQ.



**Sweet, D.J.**

Kenneth M. Krys and Christopher Stride, the duly authorized foreign representatives (the "Foreign Representatives") of SPhinX, Ltd. and its affiliated debtors (collectively, the "SPhinX Debtors"),[1] have appealed the order granting recognition and relief in aid of foreign proceedings pursuant to 11 U.S.C. §§ 1515, 1517 and 1521(a)(4), dated September 6, 2006 (the "Recognition Order"), entered by the United States Bankruptcy Court for the Southern District of New York (Drain, J.) (the "Bankruptcy Court") and the Bankruptcy Court's related Memorandum of Decision dated September 6, 2006 (the "Recognition Decision"), denying the petition (the "Petition") of the Foreign Representatives for recognition of the winding up proceedings pending with respect to the SPhinX Debtors before the Grand Court of the Cayman Islands (the "Cayman Proceedings") as "foreign main proceedings" under 11 U.S.C. §§ 1515 and 1517. The Petition was opposed by the appellees here, the Joint Subcommittee of the Official and Additional Committees

---

[1] These entities include SPhinX, Ltd.; SPhinX Macro Fund SPC; SPhinX Managed Futures Fund SPC; SPhinX Long/Short Equity Fund SPC; SPhinX Convertible Arbitrage Fund SPC; SPhinX Fixed Income Arbitrage Fund SPC; SPhinX Distressed Fund SPC; SPhinX Merger Arbitrage Fund SPC; SPhinX Special Situations Fund SPC; SPhinX Equity Market Neutral Fund SPC; SPhinX Stragegy Fund, Ltd.; SPhinX Plus SPC, Ltd.; SPhinX Managed Futures, Ltd.; SPhinX Long/Short Equity Ltd.; SPhinX Convertible Arbitrage Ltd.; SPhinX Fixed Income Arbitrage Ltd.; SPhinX Distressed Ltd.; SPhinX Merger Arbitrage, Ltd.; SPhinX Special Situations. Ltd.; SPhinX Equity Market Neutral Ltd.; and PlusFunds Manager Access Fund, SPC Ltd.

of Unsecured Creditors (the "Refco Committee") of Refco Inc. and Refco's affiliated debtors and debtors in possession (collectively, "Refco") in the jointly administered Chapter 11 cases entitled In re Refco Inc. et al., Chapter 11 Case No. 05-60006 (RDD) (the "Refco Chapter 11 Cases"), and Marc S. Kirschner, the Chapter 11 Trustee (the "RCM Trustee") for Refco Capital Markets, Ltd. ("RCM").

For the reasons set forth below, the Recognition Order is affirmed, and certain other relief sought by the Foreign Representatives is denied.

Chapter 15 of title 11 of the United States Code (the "Bankruptcy Code"), which took effect on October 17, 2005, authorized the Foreign Representatives to commence U.S. bankruptcy cases under Chapter 15 to obtain assistance from the Bankruptcy Court in aid of the Cayman Proceedings. The Recognition Order and the Recognition Decision determined the Cayman Proceedings to be "foreign nonmain proceedings" under Chapter 15.

The Recognition Decision was part of a complicated matrix of proceedings in the Bankruptcy Court and a pragmatic solution to the application of Chapter 15 in absence of reported cases dealing with the determinative issue presented here.

2

**Prior Proceedings**

The SPhinX Debtors are a group of investment vehicles that were organized and incorporated under the laws of the Cayman Islands to track certain Standard & Poor's hedge fund indices. (See Record on Appeal ("ROA") Vol. 1, Tab 3, §§ 6-7.)

### 1. The Refco Proceedings

Since 2002, the SPhinX Debtors have had an investment relationship with Refco, a broker of commodities and futures contracts. (See id. Vol. 1, Tab 3, ¶ 12.) In October 2005, Refco announced that its chief executive officer and chairman had committed a massive fraud by hiding $430 million in bad debts from the company's auditors and investors. (Id.) On October 17, 2005, certain Refco entities (the "Refco Debtors") commenced the Refco Chapter 11 Cases in the Bankruptcy Court. (Id.) The Refco Cases were assigned to Judge Drain.

On December 16, 2005, the Refco Committee commenced an action (the "Preference Action") against certain of the SPhinX Debtors to recover, as a preference, $312 million transferred from RCM to SPhinX Managed Futures Fund SPC ("SMFF") on or about October 12, 2005. (Id. Vol. 1, Tab 3, ¶¶ 14-15.) On April 20, 2005, the Refco Committee and those SPhinX Debtors that were defendants in the Preference Action entered into a settlement

3

resolving the Preference Action (the "SPhinX Settlement"). (Id. ¶ 17.) As part of that settlement, the SPhinX Debtors agreed to relinquish approximately $263 million of the $312 million that had been transferred from RCM and further agreed to release claims against the Refco bankruptcy estate with respect to those funds. (Id. Vol. 4, Tab 18, ¶ 12.)

On April 27, 2006, the Refco Committee filed a motion seeking approval of the SPhinX Settlement pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "SPhinX Settlement Approval Motion") as being in the best interests of RCM, its estate, and its creditors.

Immediately prior to the hearing on the SPhinX Settlement Approval Motion, at the instigation of certain of the investors, involuntary winding-up proceedings were commenced in the Cayman Court against SMFF and SPhinX Strategy Fund Ltd. ("Strategy"). In re SPhinX, Ltd., 351 B.R. 103, 109 (Bankr. S.D.N.Y. 2006). On June 5, 2006, joint provisional liquidators (the "JPLs") were appointed for each of SMFF and Strategy, pursuant to orders which, among other things, purported to impose a stay on proceedings against SMFF and Strategy. On the morning of the SPhinX Settlement Approval Hearing, the JPLs notified the Bankruptcy Court of the existence of the Cayman proceedings (the "First Cayman Proceedings"), as well as the fact that they had commenced Chapter 15 cases in the Bankruptcy Court with respect

4

to SMFF and Strategy, and sought an adjournment of the hearing to permit them to evaluate the SPhinX Settlement. Id.

The Bankruptcy Court denied the request, however: (1) finding that the SPhinX Settlement Approval Hearing was not for the purpose of approving any action of the Foreign Debtors, but, rather, for the purpose of considering whether to approve the decision of the Refco parties to enter into the SPhinX Settlement; and (2) declining to weigh the merits of the settlement from the perspective of non-debtor parties such as the SPhinX funds. Id. at 109-10.

On June 9, 2006, the Bankruptcy Court approved the SPhinX Settlement, holding that the Refco Committee had satisfied its burden in showing that that settlement was in the best interests of RCM, its estate, and its creditors. Id. at 110. Certain of the investors filed an appeal in district court. Id. On November 16, 2006, the district court (Berman, J.) issued an order and opinion affirming the SPhinX Settlement Approval Order in its entirety. See generally Masonic Hall & Asylum Fund v. Official Comm., Nos. 05-60006, 06 Civ. 5435(RMB), 06 Civ. 5596(RMB), 06 Civ. 5597(RMB), 06 Civ. 5598(RMB), 06 Civ. 5634(RMB), 06 Civ. 5635(RMB), 06 Civ. 5662(RMB), 06 Civ. 5976(RMB), 2006 WL 3409088 (S.D.N.Y. Nov. 16, 2006). On December 19 and 20, 2006, the investors and the Foreign Representatives filed an appeal to seek further review of the SPhinX Settlement

in the United States Court of Appeals for the Second Circuit.

## 2. The SPhinX Proceedings

On June 30, 2006, the SPhinX companies' boards of directors (collectively, the "SPhinX Board") recommended and the holder of the Founder Shares (the "Founder Shareholder") resolved that the SPhinX companies be placed in voluntary liquidation in the Cayman Islands and that the Foreign Representatives be appointed as the Joint Voluntary Liquidators ("JVLs") for the SPhinX companies. (ROA Vol. 1, Tab 3, ¶ 3 & Ex. A.)

On July 4, 2006, consistent with the resolutions of the SPhinX Board and the Founder Shareholder, the JVLs determined in the exercise of their fiduciary duties that it was appropriate to file, and therefore did file, winding up petitions in the Cayman Court on behalf of each of the SPhinX Debtors (other than SMFF), which was already the subject of a pending winding up petition). (Id. Vol. 1, Tab 3, ¶ 4; id. Vol. 3, Tab 13, 9:13-19.)

On July 28, 2006, the Cayman Court entered orders providing for the winding up of the SPhinX Debtors (other than SMFF) and the appointment of the Foreign Representatives as the Joint Official Liquidators ("JOLs") of the SPhinX Debtors under the supervision of the Cayman Court. (Id. Vol. 1, Tab 3, ¶ 4 &

6

Ex. B.)[2] Pursuant to these orders (collectively, the "Winding Up Orders"), the SPhinX Debtors are in winding up proceedings before the Cayman Court, and the Foreign Representatives are the JOLs for the SPhinX Debtors. (Id. Vol. 1, Tab 3, Ex. B.) As the JOLs, the Foreign Representatives are responsible for the winding up of the SPhinX Debtors and are obligated under Cayman Islands law, among other things, to maximize the SPhinX Debtors' assets; identify the companies' creditors and the amounts of their claims; and distribute the proceeds of the companies' assets to creditors and, thereafter, to investors. (Id. Vol. 2, Tab 10, ¶¶ 6-7.)

On July 31, 2006, the Foreign Representatives filed the Chapter 15 Petition in the Bankruptcy Court and, on that same date, sought a temporary restraining order from the Bankruptcy Court under section 1519(a) of the Bankruptcy Code pending the hearing on the Chapter 15 Petition. (Id. Vol. 1, Tab 1; id. Vol. 2, Tab 8, 5:13-15.) The Bankruptcy Court (Bernstein, C.J. (acting in Judge Drain's absence)) denied that request. (Id. Vol. 2, Tab 8, 33:14.)

On September 6, 2006, the Bankruptcy Court issued the Recognition Order and Recognition Decision in which it recognized

---

[2]As mentioned previously, winding up petitions were filed separately for Strategy and SMFF. The winding up petition against Strategy was eventually dismissed and the winding up proceedings against SMFF were "adjourned generally." (ROA Vol. 3, Tab 11, ¶ 8.)

7

these Cayman proceedings (the "Second Cayman Proceedings") as foreign nonmain proceedings pursuant to sections 1502(5) and 1517(a) of the Bankruptcy Code.[3] See generally In re SPhinX, Ltd., 351 B.R. 103. (See also id. Vol. 3, Tab 14, 4; id. Vol. 3, Tab 15, 3.)

The Foreign Representatives filed their appeal from the Recognition Decision on December 20, 2006, and it was heard by this Court on January 31, 2007.

## 3. The Recognition Decision

The Recognition Decision described the relief sought by the JOLs and found the facts with respect to the SPhinX Funds' Business on the Cayman Islands, the background of the Cayman Islands Proceedings, and the Petition. In re SPhinX, Ltd., 351 B.R. at 107-112. The Recognition Decision also set forth the basis for its jurisdiction, the guiding principles relating to the recognition of foreign proceedings and the flexibility with respect to the relief to be granted, and the consideration underlying the determination recognizing that the Second Cayman

---

[3] After the issuance of the Recognition Order and the Recognition Decision, the Foreign Representatives filed a motion to amend the Recognition Order and related findings of fact. On October 10, 2006, following the Bankruptcy Court's denial of thirty-eight of the Foreign Representative's forty discovery requests pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, the Foreign Representatives withdrew their motion to amend and filed this appeal.

8

Proceedings are foreign nonmain proceedings. Id. at 112-22.

The facts found in the Recognition Decision include the following:[4]

> Each of the SPhinX Funds is either a limited liability company or a segregated portfolio company ("SPC") incorporated and registered in the Cayman Islands.
>
> The SPhinX Funds are hedge funds whose business consisted of buying and selling securities and commodities in a manner that tracked, under a license from Standard & Poor's, certain S&P Hedge Fund Indexes.
>
> The SPhinX Funds were established as offshore entities apparently to attract non-U.S. and U.S. tax-exempt investors in the light of favorable Cayman Islands tax benefits and regulations. Although regulated in the Cayman Islands (with the SPCs subject to more regulation than the other SPhinX Funds), the SPhinX Funds did not conduct a trade or business in the Cayman Islands. They had no employees and no physical offices in the Cayman Islands (or elsewhere, for that matter).
>
> Indeed, except for corporate books and records (minute books and other statutory documents, not records of operations) required to be maintained under Cayman Islands law, the Debtors apparently have no assets in the Cayman Islands. At least the JOLs have not alleged the existence of any Cayman Islands assets, and they have acknowledged instead that "substantially all" of the Debtors' assets are in the United States. At the hearing, Mr. Stride clarified that at least ninety percent of the SPhinX Funds' approximately $500 million of assets are located in accounts in the United States.

---

[4] The record references and footnotes contained in the Recognition Decision have been omitted.

From the SPhinX Funds' inception, their hedge fund business was actually conducted under a fully discretionary investment management contract by PlusFunds Group Inc. ("PlusFunds"), a Delaware corporation located in New York City which also was responsible for creating the SPhinX Funds. PlusFunds is a debtor in this Court, Chapter 11 Case No. 06-10402 (JMP). Like the SPhinX Funds, PlusFunds is in a liquidation posture, in the process of winding up, among other things, its investment management contract with the SPhinX Funds, which was expected to be completed by August 31, 2006. Most, if not all, of the account managers retained by PlusFunds to provide services for the SPhinX Funds did so from the United States. Mr. Stride acknowledged that he did not know of any trading in securities or commodities in the Cayman Islands that was engaged in by or on behalf of the SPhinX Funds.

As noted above, the SPhinX Funds' investment strategy was closely tied to a license with Standard & Poor's, a division of McGraw-Hill Companies, Inc., a U.S. company, which permitted the account managers to track certain S & P Hedge Fund Indexes. Corporate administration of the SPhinX Funds, including net asset value calculation, also was conducted primarily in the United States, out of the Somerset, New Jersey office of Derivatives Portfolio Management, Ltd. ("DPM"), although investor subscriptions were received in the Cayman Islands for review by DPM personnel, apparently for purposes of compliance with Cayman Islands anti-money laundering requirements. The SPhinX Funds' auditors were PriceWaterhouseCoopers, an international accounting firm, with a Cayman Islands address listed in the Offering Memorandum which apparently was a requirement of Cayman Islands law. It is not clear how much work the auditors actually performed in the Cayman Islands; PriceWaterhouseCoopers resigned effective July 31, 2006.

None of the Debtors' directors resided in the Cayman Islands, and Mr. Stride was not aware of any board meeting that took place there. The Debtors' boards consisted of Irish, Bahamian and U.S. residents.

10

> The investors in the SPhinX Funds are located
> throughout the world; by dollar amount only
> approximately fourteen percent are located in
> the U.S. The JOLs do not state the
> percentage of the SPhinX Funds' Cayman
> Islands investors. Four of the nine members
> of the Debtors' Liquidation Committee,
> elected under the Companies Law, are U.S.
> based; one is Cayman Islands based.
>
> With the exception of RCM, whose preference
> claim, discussed below, would apparently make
> it the SPhinX Funds' largest creditor
> (assuming that the prior settlement of that
> claim were unwound), there appear to be few
> other material creditors. It is far from
> clear whether, under U.S. law, the investors
> in the SPhinX Funds would be viewed, in such
> capacity, as creditors, and whether claims
> that they might assert arising from the
> purchase or sale of their interests in the
> Debtors would be treated on the same priority
> as creditors' claims. See 11 U.S.C. §
> 510(b). Counsel for the JOLs stated at the
> hearing on the Petition, however, that the
> investors in the SPhinX Funds could qualify
> as creditors for purposes of the Cayman
> Islands winding up proceedings. The Refco
> Committee and the RCM Trustee's joint
> objection to the Petition asserted that the
> SPhinX Funds may be solvent; the JOLs
> disagree, but, as addressed below, the Court
> determined that it was unnecessary to address
> the issue at this time.

Id. at 107-09.

The Recognition Decision granted the Second Cayman Proceedings recognition as foreign nonmain proceedings by concluding, on the basis of the facts found, that "important objective factors point to the SPhinX Funds' COMI being located outside of the Cayman Islands" and stated that "pragmatic considerations affecting the Debtors' cases also point to a COMI

11

outside of the Cayman Islands."[5] Id. at 119. In regard to the latter, the Recognition Decision noted that the JOLs had "not identified any assets located in the Cayman Islands" and "thus the [Liquidators] and the Cayman Court would have to seek assistance from other courts (primarily [the Bankruptcy] Court because most of the assets are in the U.S.) to realize on the SPhinX Funds' assets that will go to pay creditors and investors." Id.

The Recognition Decision also stated that if there were no objectors to the Chapter 15 Petition and the Foreign Debtors and their creditors were consenting to a finding that the Cayman Islands was their COMI, "in balancing all the foregoing factors the Court might be inclined to find the Debtors' COMI in the Cayman Island and recognize the proceedings as foreign main proceedings . . . ." Id. at 121. Acknowledging that more was at issue and in dispute, and finding that the "investors' tacit consent" to a Cayman COMI was predicated upon the "improper purpose" of seeking, through delay, to effectively "overturn[]the [SPhinX] Settlement without addressing or prevailing on the merits," the Recognition Decision concluded that "where so many objective factors point to the Cayman Islands not being the Debtors' COMI, and no negative consequences would appear to result from recognizing the Cayman Islands proceedings as nonmain

---

[5]"COMI" stands for "center of main interests." See discussion infra.

12

proceedings," recognition as a nonmain proceeding was the "better choice." Id. at 121-22.

**Discussion**

1.  **Standard of Review**

When a district court reviews a decision of the Bankruptcy Court, it is authorized to "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. Conclusions of law are reviewed de novo. See In re Worldcom, Inc., 357 B.R. 223, 226-227 (S.D.N.Y. 2006) (citing In re AroChem Corp., 176 F.3d 610, 620 (2d Cir. 1999); In re Bennett Funding Group, Inc., 146 F.3d 136, 138 (2d Cir. 1998)). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013.

2.  **The Bankruptcy Court's Analysis and Resulting Determination of the Center of Main Interests Were Correct**

    a.  **The Statute**

Chapter 15 of the Bankruptcy Code was recently enacted

13

"so as to provide effective mechanisms for dealing with cases of cross-border insolvency." 11 U.S.C. § 1501 (2006). Under the statute, certain relief may be granted once a petition for recognition as a foreign proceeding has been filed. See id. § 1519. Additional relief is made available upon recognition as a foreign nonmain proceeding, and even further relief is available if the proceeding is recognized as a foreign main proceeding. See id. §§ 1520-1521. Of particular interest here is the applicability to foreign main proceedings of the automatic stay under section 362 of the Bankruptcy Code, which applies with regard to the debtor and its property within the United States. See id. §§ 362, 1520.

A foreign proceeding may be recognized as a foreign main proceeding if the proceeding is "pending in the country where the debtor has the center of its main interests." Id. § 1502(4). "In the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." Id. § 1516(c).

### b.  Analysis and Determination of the Center of Main Interests

It would appear that this case is the first in which the center of main interests ("COMI") has been disputed. The pertinent question here is what is required to rebut the

14

presumption, pursuant to § 1516(c), that the COMI is the debtor's place of registration.

As recognized by the Bankruptcy Court: "The legislative history [] indicates that the statutory presumption of § 1516(c) may be of less weight in the event of a serious dispute: '[t]he presumption that the place of the registered office is also the center of the debtor's main interest is included for speed and convenience of proof where there is no serious controversy.'" In re SPhinX, Ltd., 351 B.R. at 117 (quoting H.R. Rep. No. 109-31, pt. 1, at 112-13 (2005)). Thus, the Bankruptcy Court indicated that "because . . . the vast majority of the parties in interest tacitly support that approach, normally the Court would recognize the Cayman Islands proceedings as main proceedings." Id. at 121. Indeed, were it not for the efforts to disrupt the SPhinX Settlement, there may have been no objections to recognition of the Second Cayman Proceedings as foreign main proceedings.

The evidence before the Bankruptcy Court at the time of the Recognition Decision, however, supported the conclusion that improper forum shopping and frustration of an existing judgment was not only a "primary" purpose of the Chapter 15 filing, but "the only" apparent reason for the JOLs' request for recognition of the Second Cayman Proceedings as foreign main proceedings:

> Indeed, given that the JOLs did not articulate a proper
> basis, or even actively pursue a request, for any other

15

> relief under chapter 15 - for example, an injunction or turnover of property - with the exception of a request for further discovery primarily relating to the appeals, Tr. at 88-89, this litigation strategy appears to be the only reason for their request for recognition of the Cayman Islands proceedings as foreign main proceedings.

Id.

Such circumstances as this support denial of recognition as a foreign main proceedings on the ground that the recognition is being sought for an improper purpose. See, e.g., Baker v. Latham Sparrowbush Assocs., 931 F.2d 222, 228 (2d Cir. 1991) (finding that an entity may not file a Chapter 11 petition "which is solely designed to attack a judgment collaterally"); In re Rimsat, Ltd., 98 F.3d 956, 962 (7th Cir. 1996) (declining to defer to a foreign proceeding as "instituted in an effort to defeat" a U.S. bankruptcy proceeding and "strategic conduct that is not be encouraged"). Accordingly, the Bankruptcy Court denied the JOLs' petition for recognition of the Second Cayman Proceedings as foreign main proceedings, recognizing the proceedings instead as foreign nonmain proceedings.

In light of the resulting controversy surrounding the COMI determination in this action, it was appropriate for the Bankruptcy Court to examine whether the statutory presumption had been sufficiently rebutted. To do so, the Bankruptcy Court looked to what little case law was available on the subject.

16

Specifically, the Bankruptcy Court relied on <u>Bondi v. Bank of America, N.A. (In re Eurofood IFSC Ltd.)</u>, Case 341/04, 2006 WL 1142304 (E.C.J. May 2, 2006), from which it gleaned that the COMI must be identified based on criteria that are: (1) objective; and (2) ascertainable by third parties. See <u>In re SphinX</u>, 351 B.R. at 118 (quoting <u>Eurofood</u>, 2006 WL 1142304, at ¶ 33). In addition, the <u>Eurofood</u> court indicated that the statutory presumption could be rebutted if such criteria allowed for the establishment that the debtor company's registered office was nothing more than "'a letterbox' company not carrying out any business in the [location] in which its registered office is situated." <u>See Eurofood</u>, 2006 WL 1142304, at ¶ 34.

Based on the facts found, the Bankruptcy Court rightly concluded that objective factors ascertainable to third parties pointed to the SphinX Funds' COMI not being located within the Cayman Islands, thereby sufficiently rebutting the statutory presumption.

Collectively, these improper purpose and rebuttal analyses, combined with pragmatic considerations, led the Bankruptcy Court to conclude, "where so many objective factors point to the Cayman Islands not being the Debtors' COMI, and no negative consequences would appear to result from recognizing the Cayman Islands proceedings as nonmain proceedings, that is the better choice." <u>In re SphinX, Ltd.</u>, 351 B.R. at 122. Overall, it was appropriate for the Bankruptcy Court to consider the

17

factors it considered, to retain its flexibility, and to reach a pragmatic resolution supported by the facts found.  No authority has been cited to the contrary.

**Conclusion**

The findings of fact of the Bankruptcy Court have not been demonstrated to be clearly erroneous and its conclusions of law have not violated Chapter 15 or any cited authority. Therefore, the Recognition Decision is affirmed, no remand is required, and no consideration need be given to reassignment.

It is so ordered.

**New York, NY**
**July 3 , 2007**

ROBERT W. SWEET
U.S.D.J.

18